# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

**Appeal from the United States District Court
for the Southern District of Ohio, Western Division**

**Case No. CA 16-3068**

---

## DOUGLAS PFENNING
Plaintiff-Appellant,

v.

## LIBERTY LIFE ASSURANCE COMPANY OF BOSTON
Defendant-Appellee.

---

## BRIEF OF THE APPELLEE

Douglas R. Dennis
FROST BROWN TODD LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
(513) 651-6727
(513) 651-6981 (facsimile)

*Attorney for Appellee Liberty Life
Assurance Company of Boston*

# DISCLOSURE OF CORPORATE AFFILIATIONS
# AND FINANCIAL INTEREST

DOUGLAS PFENNING,      :
                   :
         Plaintiff-Appellant,   :     Case No. CA 16-3068
                   :
    vs.              :
                   :
LIBERTY LIFE ASSURANCE  :
COMPANY OF BOSTON,     :
                   :
         Defendant-      :
         Appellee.        :
                   :

Pursuant to 6th Cir. R. 26.1, Liberty Life Assurance Company of Boston makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  **YES**

    All parent corporations of Liberty Life Assurance Company of Boston are:

Liberty Mutual Holding Company Inc.
LMHC Massachusetts Holdings Inc.
Liberty Mutual Group Inc.
Liberty Mutual Insurance Company
Liberty Mutual Fire Insurance Company

    No publicly held company owns ten percent or more of the stock in Defendant Liberty Life Assurance Company of Boston.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?   **NO**


  */s/Douglas R. Dennis*           April 11, 2016
Douglas R. Dennis                Date

# TABLE OF CONTENTS

DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL
INTEREST ......................................................................................................i

TABLE OF CONTENTS ........................................................................... ii

TABLE OF AUTHORITIES ...................................................................iv

REQUEST FOR ORAL ARGUMENT ...................................................1

INTRODUCTION .....................................................................................1

JURISDICTIONAL STATEMENT .........................................................2

STATEMENT OF THE ISSUES...............................................................2

STATEMENT OF THE CASE...................................................................2

STATEMENT OF FACTS .........................................................................3

      I. Abuse of Discretion Standard Applies...............................................4

      II. Liberty Life Correctly Defined "Occupation"..................................7

      III. Liberty Life is Permitted to Consult the Dictionary of
      Occupational Titles to Determine Occupation.....................................7

      IV. Liberty Life Properly Reviewed and Considered the FCE
      Results ...............................................................................................13

      V. Liberty Life Properly Reviewed and Considered All of the
      Medical Data ....................................................................................13

SUMMARY OF ARGUMENT .............................................................22

ARGUMENT ...........................................................................................24

      I. Application of the Cal. Ins. Code does not affect the standard of
      Review under the facts of this case...................................................24

II. Liberty Life properly determined that Mr. Pfenning could
Perform sedentary and even light work with some restrictions..........25

III. Liberty Life properly determined that Mr. Pfenning's
Occupation is most often performed at both the sedentary and
at the light physical demand levels, with sufficient opportunities
for work at either demand level...........................................................27

CONCLUSION ....................................................................................29

CERTIFICATE OF COMPLIANCE ......................................................31

CERTIFICATION OF SERVICE ...........................................................32

DESIGNATION OF APPENDIX CONTENTS.......................................33

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE**

*Easterly v. Philips Electronics North America Corp.,* 37 Fed. Appx. 166
(6th Cir. 2002) .......................................................................................6

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115,
109 S.Ct. 948 (1989) ..............................................................................5

*Frazier v. LIMA,* 725 F.3d 560 (6th Cir. 2013) ...................................26, 29

*Johnson v. Eaton Corp.,* 970 F.2d 1569 (6th Cir. 1992) ......................6, 29

*Killian v. Healthsource Provident Admins., LLC,* 152 F.3d 514, 520
(6th Cir. 1998) ...................................................................................5, 29

*Perry v. Simplicity Engineering*, 900 F.2d 963, 966 (6th Cir. 1990)...................6, 24

*Shelby Co. Health Care Corp. v. Southern Council of Indus. Workers
Health & Welfare Fund,* 203 F.3d 926 (6th Cir. 2000) .........................5, 6

*Wells v. United States Steel & Carnegie Pension Fund, Inc.,*
950 F.2d. 1244 (6th Cir. 1991)...............................................................6, 29

*Whitaker v. Hartford Life & Acc. Ins. Co*., 404 F.3d 947 (6th Cir. 2005)...............25

*Wilkins v. Baptist Healthcare System, LLC,* 150 F.3d 609, 612
(6th Cir. 1998) .........................................................................................6

*Yeager v. Reliance Std. Life Ins. Co.,* 88 F.3d 376, 380 (6th Cir. 1996) .................5

California Insurance Code Section 10110.6(a) .......................................4

**REQUEST FOR ORAL ARGUMENT**

Plaintiff-appellant has requested oral argument; Liberty Life requests oral argument as well to answer the Court's questions with respect to the content of the record, this brief and plaintiff-appellant's brief.

*/s/Douglas R. Dennis*

**INTRODUCTION**

This case is Mr. Pfenning's statutory appeal of Liberty Life Assurance Company of Boston's ("Liberty Life's") denial of his long-term disability benefits under ERISA. Liberty Life denied Mr. Pfenning's benefits because he does not meet the definition of "disabled" as defined in the Group Disability Income Policy ("the Policy") issued by Liberty Life Assurance Company of Boston ("Liberty Life") and sponsored by the Plan.

The Policy required Liberty Life to determine whether the medical evidence demonstrated that Mr. Pfenning could no longer perform his own occupation, to entitle Mr. Pfenning to long-term disability benefits. (R. 9, Administrative Record, LL 1-33).

For review of this administrative appeal, the key components to the claim are first, what is the standard of review, and second under that standard of review, whether the trial court correctly found that the medical evidence demonstrates that

Mr. Pfenning can perform his own occupation subject to restrictions, based on substantial medical evidence.

## JURISDICTIONAL STATEMENT

Defendant-Appellee Liberty Life agrees with Mr. Pfenning's jurisdictional statement.

## STATEMENT OF THE ISSUES

Mr. Pfenning lists five:

1.    Did the district court err in determining the standard of review as arbitrary and capricious?

2.    Did the district court err in determining what is an "occupation?"

3.    Did the district court err by allowing Liberty Life to consult the Dictionary of Occupational Titles?

4.    Did the district court err in reviewing Liberty Life's handling of the FCE results?

5.    Did the district court err in evaluating Liberty Life's denial of benefits?

## STATEMENT OF THE CASE

Mr. Pfenning filed this lawsuit as a statutory appeal of Liberty Life's denial of long-term disability benefits claim under ERISA. Liberty Life denied Mr. Pfenning's benefits because he does not meet the policy definition of "disabled"

for his "own occupation." (R. 9, LL 67).  The trial court agreed and affirmed the denial. (R. 17, Order).

## STATEMENT OF FACTS

Mr. Pfenning filed a disability claim with Liberty Life under the policy based on a diagnosis of idiopathic peripheral autonomic neuropathy and lumbosacral neuritis NOS.  (R. 9, LL 35-36).  His last day of work was September 18, 2013.  *Id.*  Liberty Life approved short term disability through March 18, 2014 (R. 9, LL 36), but denied long-term disability in a letter dated March 14, 2014.  (R. 9, 341-346).

Mr. Pfenning appealed and submitted additional materials.  Liberty Life reviewed these materials as well.  Based on the totality of medical information in the administrative record, Liberty Life determined that Mr. Pfenning was not disabled under the Policy terms with respect to the "own occupation" time period and denied his claim.  (R. 9, LL61-68).  It is from this denial on appeal to Liberty Life that Mr. Pfenning appealed to the district court. After the district court found in favor of Liberty Life (R. 17), Mr. Pfenning timely appealed to this Court.

In order to evaluate this case, it is important to understand that this is an administrative ERISA appeal.  Therefore, the standard of review and policy definitions and terms create the framework for review.  The medical records and

vocational assessment in the claim file are the facts to which that framework is applied.

## I.    Abuse of Discretion Standard Applies

First, the Court will consider the standard of review that it is applying in reviewing Liberty Life's determination.  Under the Policy, Section 7, subheading "General Provisions states:"

> Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding.

(R. 9, LL 25).

However, Mr. Pfenning states that California law prevents this provision from taking effect and states that he believes this Court should review this case *de novo*.  Mr. Pfenning is wrong on this point.

Section 10110.6 of the California Code states that a grant of discretion is void "(a) If a policy, contract, certificate, or agreement offered, issued, delivered, or renewed, whether or not in California, that provides or funds life insurance or disability insurance coverage ***for any California resident*** * * * ." [Emphasis added].  Mr. Pfenning is not a California resident. (R.1, Complaint).  Furthermore, there is no evidence in this record with respect to coverage for any other beneficiary. Therefore, there is no evidence in this record that this statute applies to

this case and thus, the discretionary language remains in effect to render the standard of review "arbitrary and capricious."

And this is exactly what the trial court held, noting that "all cited pleadings [by Mr. Pfenning] were filed in federal court in California courts involving California residents. For this reason, Liberty [Life] is not precluded from arguing that the discretionary clause in the [P]olicy is valid in this case." (R. 17, p. 16).

Because the Policy expressly grants Liberty Life the discretionary authority to determine eligibility, Liberty Life's decision to terminate Mr. Pfenning's benefits is reviewable under the "highly deferential arbitrary and capricious standard of review." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948 (1989); *Yeager v. Reliance Std. Life Ins. Co.,* 88 F.3d 376, 380 (6th Cir. 1996). This standard requires that Liberty Life's decision be upheld "if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence." *Killian v. Healthsource Provident Admins., Inc.,* 152 F.3d 514, 520 (6th Cir. 1998).

"A decision is not arbitrary and capricious if it is based on a reasonable interpretation of the Plan." *Shelby Co. Health Care Corp. v. Southern Council of Indus. Workers Health & Welfare Fund*, 203 F.3d 926, 933 (6th Cir. 2000). An interpretation is unreasonable only if it imposes a requirement that cannot be found in the Plan language or when an administrator failed to consistently interpret the

Plan in past cases. *Easterly v. Philips Electronics North America Corp.,* 37 Fed. Appx. 166, 168 (6th Cir. 2002), *citing Shelby Co. Health Care Corp*., 203 F.3d at 935 and *Adams v. Avondale Indus., Inc.,* 905 F.2d 943, 950 (6th Cir. 1990). Where an administrator has advanced a reasonable interpretation, that interpretation should be upheld even if there is another conflicting reasonable interpretation. *E.g., Wells v. United States Steel & Carnegie Pension Fund, Inc.,* 950 F.2d 1244, 1248 (6th Cir. 1991); *Johnson v. Eaton Corp.,* 970 F.2d 1569, 1574 (6th Cir. 1992).

Thus, Liberty Life is permitted to exercise its judgment over a conflict in the medical evidence and make a determination as to whether a disability exists or not. This is what it did. Accordingly, Liberty Life correctly denied Mr. Pfenning's claim.

Furthermore, just as Liberty Life had only the medical records that were provided to it, which comprise most of the administrative record, the District Court is confined to the same administrative record that was before Liberty Life. *Wilkins v. Baptist Healthcare System, Inc.,* 150 F.3d 609, 612 (6th Cir. 1998), citing *Perry v. Simplicity Engineering,* 900 F.2d 963, 966 (6th Cir. 1990). The record here consists of the claim file and the Policy, Plan and Summary Plan Description only.

**II.** **Liberty Life Correctly Defined "Occupation"**

**III.** **Liberty Life is Permitted to Consult the Dictionary of Occupational Titles to Determine Occupation**

These two issues cited by Mr. Pfenning aim at Liberty Life's vocational review and are addressed together.

Although Mr. Pfenning mischaracterizes Liberty Life's vocational review as cursory and as if it ignores Mr. Pfenning's job description and occupation, that is patently not true. Liberty Life had two vocational experts examine all of the vocational evidence and then apply nationally recognized occupational sources to it to determine the best occupational description.

Importantly, the Policy language does not say "own job" or "any job" but instead says "own occupation" or "any occupation" when determining eligibility for disability benefits. Mr. Pfenning would claim that there is no distinction between the term "job" and "occupation." However, the Quick Desk Reference for Forensic Rehabilitation Consultants defines occupation as a *group of jobs*. (R. 9, LL94). This is an important distinction. The question is not what Mr. Pfenning's job is. It is what Mr. Pfenning's occupation is. There is a range of jobs that fit one occupation. In this case, some are in the sedentary work capacity, others are in the light work capacity. It is to this framework that Liberty Life's vocation experts researched Mr. Pfenning's vocational situation—using the information regarding

his job to properly categorize his occupation, as required by the Policy when it says "own occupation" instead of "own job."

Mr. Pfenning indicated that he completed college in marketing and had worked in claims for insurance companies, including his recent job with Farmers Insurance, driving around and inspecting home damages, which involved driving and climbing on roofs. (R. 9, LL465-466).

Farmers Insurance provided a description for Mr. Pfenning's *job*. (R. 9, LL528-529). The description's physical requirements are bending, pulling, sorting, carrying up to 50 pounds, pushing, speaking English, climbing, reaching, standing, key entering, reading English, walking, kneeling, seeing, writing English. (R. 9, LL529). According to Farmers Insurance, duties are *normally performed in a climate-controlled office environment*, but there is field exposure to uncontrolled outside conditions, excessive noise, chemicals, moving mechanical parts, fumes, odors, dust, mists, gases, oils, smoke, soot or poor ventilation. *Id*. It does not describe hours of driving and constant climbing on roofs as Mr. Pfenning would have the Court believe.

Mr. Pfenning's counsel attached two other claims representative descriptions—one from Country Financial and one from Allstate, neither of whom Mr. Pfenning worked for at the time he went on disability. (R. 9, LL265-268). If anything, these additional descriptions emphasize that each job is different in this

occupation. A wide variety of duties may or may not apply to this kind of role. *Id.* Unlike Mr. Pfenning's job description, these two companies indicate a sizeable amount of travel, instead of "duties are normally performed in a climate controlled office environment." *Compare Id.* with R. 9, LL529.

## A. February 27, 2014 Occupational Analysis/Vocational Review by Amanda Voce, MA, CRC

Amanda Voce, an expert vocational case manager, provided a report dated February 27, 2014. (R. 9, LL424-426). She noted that Mr. Pfenning's Farmers Insurance job description was used to determine which occupation is best represented by that description. (R. 9, LL424). She determined that the job description best fit the occupation "Claim Examiner/Adjuster/ Investigator." (R. 9, LL424). The Dictionary of Occupational Titles (DOT) descriptions and Standard Occupational Classification/Occupational Information Network (SOC/O*NET) ***all*** indicate a range that includes sedentary to light physical demand work for this occupation. (R. 9, LL425). Ms. Voce concluded that based on standard vocational resources outlined in her report coupled with her own vocational expertise, the typical physical demands of Mr. Pfenning's ***own occupation*** are most often at sedentary and light work physical demand levels and sufficient opportunities exist at both physical capacity levels. (R. 9, LL426).

## B. August 16, 2014 Vocational Opinion Report by Mark Pinti, MS, CRC, CCM, ABVE

Mark Pinti, the vocational expert that Mr. Pfenning's counsel uses in every one of his disability cases, reported only Mr. Pfenning's self-reported job description, and not Farmers Insurance's written description. (R. 9, LL151-154). He stated that the DOT does not have a title that encompasses Mr. Pfenning's job. *Id*. He stated that Catastrophic Claims Adjuster is not the same as Claims Adjuster. *Id*. Ignoring all nationally recognized resources, such as DOT or SOC/O*NET, and refusing to determine Mr. Pfenning's "occupation," Mr. Pinti decided without anything more than his own gut feeling that Mr. Pfenning's job should be categorized as medium level work. *Id*.

Mr. Pinti also seems to think he is a doctor. He disagreed with Dr. Wickstrom's FCE conclusions that Mr. Pfenning could perform sedentary work, instead stating that such a conclusion "is extremely remote." (R. 9, LL154). Never mind that it lined up with all of the valid medical evidence: (1) Dr. Lang and Dr. White found that Mr. Pfenning could perform sedentary or even light work (R. 9, LL108-129); (2) restrictions stated by Dr. Potts (R. 9, LL366-367); (3) the restrictions form filled out by Dr. O'Connell earlier (R. 9, LL317) and (4) the surveillance (R. 9, LL473-488) unanimously indicated that Mr. Pfenning could perform sedentary work. But Mr. Pinti disagreed anyway, underlining his bias and refusal to accept the medical evidence or to review Mr. Pfenning's occupation

using any resource. Mr. Pinti did not conduct the FCE, of course, but thinks he knows more than the doctor who did.  In fact, Mr. Pinti did not even review any medical records other than Dr. Wickstrom's FCE—which Mr. Pinti disagreed with anyway.

Mr. Pinti's basis for his opinion is not even the job description provided by Farmers Insurance for Mr. Pfenning's actual job, but rather Mr. Pfenning's own self-reported description and some articles Mr. Pinti found on the internet. (R. 9, LL155-160).  These articles are not informative about Mr. Pfenning's work for Farmers anymore than the Allstate description with 90% travel is.

There is a wide range of potential jobs in Mr. Pfenning's occupation, defined by the DOT and SOC/O*NET. That range runs from sedentary to light work, which fits within the restrictions set forth in the medical evidence.

Instead, Mr. Pinti rejected all of it—the medical evidence, the fact that Mr. Pfenning can perform sedentary work, the occupational sources, even the job description Farmers Insurance provided—in favor of his own gut feeling about Mr. Pfenning's physical capability and his own personal belief that Mr. Pfenning's self-reported job description is performed at the medium work level.  This weak analysis should be rejected as unreliable on its face.

### C. November 12, 2014 Occupational Analysis/Vocational Review by Michelle Reddinger, MA, CRC

Ms. Reddinger provided an occupational analysis and vocational review on November 12, 2014. (R. 9, LL91-96). She reviewed the Dictionary of Occupational Titles (DOT), Occupational Outlook Handbook (OOH), Occupational Information Network (O*NET)/Standard Occupational Classification (SOC), internet job boards, the report by Amanda Voce, the report by Mark Pinti as well as Mr. Pfenning's claim file. *Id*.

Ms. Reddinger found the Farmers Insurance job description in the claim file and listed the job duties. *Id.* She also considered Mr. Pfenning's self-reported description of his job as reported by Mr. Pinti. (R. 9, LL92). Based on all of this information, the job tasks are best represented by the occupational title Claim Examiner/Adjuster/Investigator. *Id.* This occupational title has four DOT descriptions and two SOC/O*NET descriptions that accurately reflect the totality of the occupation. *Id.* Ms. Reddinger provided the reference codes for these descriptions at the end of her report: 168.267-014; 191.167-014; 241.217-010 and 241.267-018. (R. 9, LL94). Unlike Mr. Pinti's report which did not even undertake to analyze what Mr. Pfenning's "own occupation" would entail, Ms. Reddinger's references from the DOT match up completely with the job duties found in the Farmers Insurance job description. *Id*.

Ms. Reddinger reported that these descriptions indicate that this occupation is most often performed at both the sedentary and at the light physical demand levels, with sufficient opportunities for work at either demand level. (R. 9, LL93). Ms. Reddinger points out that she has made no assessment of what Mr. Pfenning's functional capacity would be. *Id.* This makes sense, since she is not a medical doctor. (R. 9, LL95).

Ms. Reddinger stated that Mr. Pinti's report confused "own occupation" as defined in the Policy with "own job" as defined by Mr. Pfenning. *Id.* They are not the same. Ms. Reddinger cites the Quick Desk Reference for Forensic Rehabilitation Consultants which defines "occupation" as a group of jobs. (R. 9, LL94). So "own occupation" as used in the Policy means the group of jobs to which Mr. Pfenning's job belongs—not just Mr. Pfenning's job itself. This is important because there is a range of jobs that fit the one occupation. Some are in the sedentary work capacity, others are in the light work capacity.

As long as the medical evidence shows that Mr. Pfenning can perform his own *occupation*—and it does—he is not disabled under the terms of the Policy.

## IV.    Liberty Life Properly Reviewed and Considered the FCE Results

## V.    Liberty Life Properly Reviewed and Considered All of the Medical Data

These two issues cited by Mr. Pfenning aim at Liberty Life's medical review and are addressed in tandem.

The Policy defines all the relevant terms used in determining Mr. Pfenning's eligibility. This is important, because often doctors or others who are not administering the policy do not examine the relevant terms yet draw conclusions about whether someone is "disabled" using their own criteria. The only relevant criteria are set forth in the Policy.

Under Section 4, "Disability Benefit", a Disability Benefit will be paid:

When Liberty receives Proof that a Covered Person is Disabled due to Injury or Sickness and requires the regular attendance of a Physician, Liberty will pay the Covered Person a Monthly Benefit after the end of the Elimination Period. The benefit will be paid for the period of Disability if the Covered Person gives to Liberty proof of continued:

1. Disability; and
2. Regular Attendance of a Physician.

The proof must be given upon Liberty's request and at the Covered Person's expense. (R. 9, LL12). Thus, Mr. Pfenning is under a continuing obligation to provide "proof" of a disability as defined above and that includes regular attendance with treating physicians for that disability. The Policy defines "disability" as follows:

Under Section 2, "Definitions," the following terms are defined:

"**Disability**" or "**Disabled**" is defined for Mr. Pfenning's claim under subsection 1. It states:

1. For persons other than pilots, co-pilots and crew of an aircraft:

i. if the Covered Person is eligible for the 24 Month Own Occupation Benefit, **"Disability"** or **"Disabled"** means during

the Elimination Period and the next 24 months of Disability the
Covered Person is unable to perform the Material and
Substantial Duties of his occupation on an Active Employment
basis because of an Injury or Sickness; and

ii.     after 24 months of benefits have been paid, the Covered Person
is unable to perform, with reasonable continuity, all of the
material and substantial duties of his own or any other
occupation for which he is or becomes reasonably fitted by
training, education, experience, age and physical and mental
capacity.

(R. 9, LL5).

This appeal deals only with section i ("own occupation") as there has

been no evaluation of section ii ("own or any other occupation") that follows

the initial 24-month period.  Accordingly, the decision on this appeal is

limited to just the 24-month "own-occupation" period.  What is relevant for

this review is not whether or not Mr. Pfenning has chronic health problems

or restrictions.  What is relevant is whether or not there is substantial

evidence that his health problems and particularly his restrictions prevent

him from working at his own occupation.

Plaintiffs act as though the only things that matter in the entire

administrative file are the FCE results and Mr. Pinti's vocational report.  But there

is more to the medical evidence and policy provisions than just that.  A full

summary of all the medical evidence and policy provisions can be found in Liberty

Life's brief (R. 13) that need not be repeated in full here.  However, there is plenty

more pertinent medical evidence than has been presented by Mr. Pfenning in this appeal.

### A. Liberty Life Properly Considered the FCE Evidence

Dr. Wickstrom conducted a functional capacity evaluation of Mr. Pfenning to determine what he could and could not physically do. (R. 9, LL161-177). This evaluation was submitted to Liberty Life by Mr. Pfenning on appeal. *Id*., (styled as "Plaintiff's Exhibit B.") Mr. Pfenning self-reported that he is physically limited by neurological problems such as generalized fatigue, balance difficulty, hands/tremor, tightness, weakness, dizziness, pain/neuropathy in his lower legs and memory difficulties and severe depression. *Id.*

The first five pages of Dr. Wickstrom's report are self-reported problems by Mr. Pfenning. (R. 9, LL161-165). They are very similar to the self-reported problems stated earlier by Mr. Pfenning. (R. 9, LL468-470). Starting at page 6, Dr. Wickstrom took test results that run through page 14. (R. 9, LL166-174). Pages 15 and 16 explain standards for the resulting conclusions stated on page 17. (R. 9, LL175-176).

Dr. Wickstrom concluded that Mr. Pfenning reported multiple areas of subjective complaints that demonstrated multiple inconsistencies that made Dr. Wickstrom question his reliability and validity on many functional tests that were administered during this exam. (R. 9, LL177). Mr. Pfenning's performance was

substantially limited by poor agility, yet he has not used an assistive device recently. *Id*.

Dr. Wickstrom felt that due to unexplained demyelination findings on earlier MRIs and uncontrolled hypertension that Mr. Pfenning should be restricted to sedentary work. *Id*. He should be restricted from all climbing of ladders, walking on uneven grounds, prolonged sitting in a constrained posture and from carrying 50 pounds or more. *Id*. Dr. Wickstrom also indicated that Mr. Pfenning would benefit from psychology evaluation to determine what psychiatric intervention might help. *Id*.

These restrictions are virtually identical to those found reasonable by Dr. Potts earlier during his medical records review: standing and walking on an occasional basis; no walking on wet or uneven ground or in low light environment; no climbing ladders; climbing steps occasionally as long as they are equipped with a banister; squatting, bending or kneeling only occasionally and not on uneven or wet surfaces or in low light environment; no activity in unprotected heights or near unprotected bodies of water; pushing/pulling up to 10 pounds while standing/walking; pushing/pulling up to 20 pounds while sitting on an occasional basis; lifting up to 10 pounds on an occasional basis while standing/walking. (R. 9, LL366-367).

Dr. David Lang is a board certified neurologist with an extensive resume (R. 9, LL122-124) and Dr. Sarah White is board certified in physical medicine and rehabilitation, electrodiagnostic medicine and with certification by the American Board of Independent Medical Examiners. (R. 9, LL125-129). These two doctors evaluated Mr. Pfenning's entire medical file and surveillance, including vocational evaluations and provided a report on November 6, 2014. (R. 9, LL107-129). Dr. Lang made several attempts to reach Dr. Pugar without success. (R. 9, LL108). Dr. White called Dr. O'Connell who stated that he would not discuss physical functionality with her. (R. 9, LL109).

Dr. Lang thought no restrictions are supported by anything more than self-reported by Mr. Pfenning and that those are not consistent with the surveillance and the FCE. Dr. White felt that while some findings were significant enough to warrant some restrictions, examinations yielded no significant neurological compromise and diagnostics and Dr. Wickstrom's Functional Capacity Evaluation were all inconsistent and therefore, unreliable. (R. 9, LL109). In fact, Dr. Lang and Dr. White agreed that the surveillance and FCE results negated nearly all self-reported complaints by Mr. Pfenning. *Id.*

Dr. White summarized her findings and indicated great concern that self-reported symptomology may be unreliable while treating doctors are having difficulty getting a diagnosis which becomes evident during the FCE. Specifically,

during push pull strength testing and walk velocity test, the findings were inconsistent and Dr. Wickstrom indicated "unsure." (R. 9, LL112). During the FCE horizontal pull testing and two square step test, inconsistent findings were indicated again. *Id*. With regard to specific performance concerns, there were unusual or inconsistent symptoms, inconsistent weakness or strength, unusual behaviors or overreaction and increased baseline symptoms after exam. *Id*.

Dr. Lang summarized the many inconsistent diagnoses over time. (R. 9, LL113). Dr. Lang stated that cerebral spinal fluid findings were supportive of a potential MS diagnosis, assuming the findings can be clinically correlated. (R. 9, LL114). The presence of oligoclonal bands was noted as supportive, but not diagnostic of such a diagnosis, which is also what Dr. Pugar indicated when he found them. *Id*. The difficulty as explained by Dr. Lang, is that each of the findings does not explain the clinical symptoms and physical findings. *Id*. Even the MRI findings are equivocal. *Id*. The clinical symptoms and examination suggest a peripheral nerve problem while the spinal fluid findings and imaging suggest a central nervous system problem. (R. 9, LL114-115). No diagnosis was clear or definitive. (R. 9, LL115).

Both Dr. Lang and Dr. White found that Mr. Pfenning could perform sedentary and even light work with some restrictions. (R. 9, LL108-129). This finding is within the same range of restrictions stated by Dr. Potts earlier (R. 9,

LL366-367) and the Dr. Wickstrom FCE report submitted by Mr. Pfenning's counsel (R. 9, LL161-177), as well as the restrictions form filled out by Dr. O'Connell earlier (R. 9, LL317). It is consistent with the surveillance. (R. 9, LL473-488). Importantly, there is no valid counterpoint to these restrictions which are supported by the FCE testing, surveillance observation, medical records comprehensive review and main treating doctor's evaluation in these medical records. Contrary to Mr. Pfenning's hyperbole, the FCE results were central to Liberty Life's findings, not ignored by them.

### B. Liberty Life Carefully Considered All Medical Evidence

While Mr. Pfenning was able to show symptomology, there is a conflict in the medical evidence whether his shortness of breath prevented him from performing sedentary work in any occupation—as defined in the Policy.

On the one hand, both Dr. Lang and Dr. White found that Mr. Pfenning could perform sedentary and even light work with some restrictions. (R. 9, LL108-129). This finding is consistent with the restrictions stated by Dr. Potts earlier (R. 9, LL366-367) and the Dr. Wickstrom FCE report submitted by Mr. Pfenning's counsel (R. 9, LL161-177), as well as the restrictions form filled out by Dr. O'Connell earlier (R. 9, LL317). It is consistent with the surveillance. (R. 9, LL473-488). Meanwhile, there is no valid counterpoint to this FCE testing,

surveillance observation, medical records comprehensive review and main treating doctor's evaluation in these medical records.

On the other hand, Mr. Pfenning has gone undiagnosed. As Dr. Lang pointed out, the clinical symptoms and examination suggest a peripheral nerve problem while the spinal fluid findings and imaging suggest a central nervous system problem. (R. 9, LL114-115). No diagnosis was clear or definitive. (R. 9, LL115).

Dr. Pugar stated that he believes Mr. Pfenning has "probable MS" based still on inconclusive findings on the punch biopsy and MRI scans. (R. 9, LL70-75). Dr. Lang stated that this opinion does not change his own previous conclusions. *Id*. Dr. Lang also pointed out that MS is a neurological diagnosis but does not imply functional impairment, restrictions or limitations by itself. *Id*.

Dr. White found the self-reported symptomology may be unreliable as treating doctors had difficulty getting a diagnosis which was evident during the FCE. Specifically, during push pull strength testing and walk velocity test, the inconsistent findings caused Dr. Wickstrom to indicate "unsure." (R. 9, LL112). During the FCE horizontal pull testing and two square step test, Dr. Wickstrom indicated inconsistent findings again. *Id*. With regard to specific performance concerns, there were unusual or inconsistent symptoms, inconsistent weakness or

strength, unusual behaviors or overreaction and increased baseline symptoms after exam. *Id*. These are real concerns. The surveillance only underlines them.

With Dr. Lang, Dr. White, Dr. Wickstrom and Dr. O'Connell all stating that Mr. Pfenning could work at least at a sedentary capacity and no countervailing statement regarding functional capacity, it is reasonable for Liberty Life to conclude that Mr. Pfenning has at least a sedentary functional capacity. In fact, the restrictions, as outlined, suggest a light duty work capacity as long as the restrictions are followed.

Mr. Pfenning's occupation is found in abundance in both sedentary and light work capacities. Therefore, it is reasonable for Liberty Life to conclude that Mr. Pfenning can perform his occupation, since he can function in a sedentary capacity.

## SUMMARY OF ARGUMENT

Mr. Pfenning essentially complains of three things. First, that the standard of review is de novo, not the arbitrary and capricious standard, because of California Insurance Code 10110.6(a). Second, that the only relevant inquiry into Mr. Pfenning's own occupation is his personal job description and not any other source. And third, that FCE is the only relevant medical data, to the exclusion of the rest of the medical data.

The trial court found that California law only applied where there is evidence of a California resident. Here, Mr. Pfenning is an Ohio resident. There is

no other evidence regarding other beneficiaries in this record. Had California wanted to provide the blanket coverage that Mr. Pfenning claims, it could have simply said that any insurance policy governed by California law may not include a provision that preserves discretionary authority to the insurer. But California did not do this. Instead, California stated that the policy must also be one that "provides or funds life insurance or disability insurance coverage for any California resident . . ." It may be that Farmers Group, Inc. has covered California residents with this policy, but there are no facts in this record to support it. Mr. Pfenning would either wholly ignore that part, or worse, have the court presume facts not in evidence. This court should do neither and apply the arbitrary and capricious standard, as the trial court correctly did.

Even under a *de novo* standard, however, Liberty Life properly considered all of the medical evidence under the terms of the policy, correctly determined the medical restrictions that applied to Mr. Pfenning, and vocational experts correctly analyzed Mr. Pfenning's job "as it is normally performed in the general labor market in the national economy" (see.e.g., *Frazier v. LIMA*, 725 F.3d 560 (6th Cir. 2013) and determined that Mr. Pfenning could perform such duties with his medical restrictions.

Accordingly, the trial court's order should be affirmed.

# ARGUMENT

## I.   Application of the Cal. Ins. Code does not affect the standard of review under the facts of this case.

> In the ERISA context, the role of the [trial] court is to determine whether the administrator or fiduciary made a correct decision * * *. Nothing in the legislative history suggests that Congress intended that federal district courts would function as substitute plan administrators, a role they would inevitably assume if they received and considered evidence not presented to administrators concerning an employee's entitlement to benefits. Such a procedure would frustrate the goal of prompt resolution of claims by the fiduciary under the ERISA scheme.

*Perry v. Simplicity Engineering*, 900 F.2d 963, 966 (6th Cir. 1990). If vague and unsubstantiated innuendo or facts not in evidence, permitted a court to rewrite the standard of review for this Court, that would frustrate the goal set forth in *Perry*.

Mr. Pfenning correctly cites Cal. Ins. Code 10110.6(a) at page 24 of his brief. He also then discusses in some detail the interplay of preemption and the savings clause—which the trial court found in his favor—and Liberty Life does not dispute that finding. He also spends pages and pages on whether a choice of law provision should be disturbed—Liberty Life does not dispute that finding either.

It is curious that Mr. Pfenning argues by proxy over the Illinois statute—which is plain and straightforward and does not invoke odd language such as the California requirement that a California resident must be covered under the policy for the law to apply.

Sticking to the California code language, the only question is whether Cal. Ins. Code 10110.6(a) applies to Mr. Pfenning's case to make it a *de novo* review case or not. And because of the oddball wording of the code section, it requires that a California resident be covered by the policy. Mr. Pfenning is an Ohio resident. The administrative record does not show a California resident is covered. All that's left to Mr. Pfenning is arm-waving, italics, exclamation points, hyperbole and either California courts applying the section *to* California residents, or other states' courts applying completely different sections to their states' residents. That's not evidentiary support for Mr. Pfenning's situation. Accordingly, the arbitrary and capricious standard of review should not be disturbed.

## II.   Liberty Life properly determined that Mr. Pfenning could perform sedentary and even light work with some restrictions.

Certainly, for Liberty Life to make good benefits' decisions, it has to be able to rely on the opinions of specialists reviewing the medical evidence. If, as Mr. Pfenning claims, all specialists who provide medical opinions to Liberty Life are suspect and should be discounted, then all claims for benefits where a treating physician believed that disability (any definition) existed would almost always be upheld. Mr. Pfenning also cites to CFR regulations and asks this Court to apply them to this case.

But that is not the law. In fact, in *Whitaker v. Hartford Life & Acc. Ins. Co.*, 404 F.3d 947 (6th Cir. 2005), this Court held that an ERISA plan administrator is

not bound by a Social Security Administration disability determination for disability when reviewing a claim for benefits under an ERISA plan. This Court reasoned that social security benefits are measured under federal criteria—CFR regulations—while ERISA benefits are governed solely by the terms of each individual plan. CFR regulations require courts to give preferential treatment to treating physicians, which is not true for ERISA benefits.

Against that backdrop, Liberty Life reviewed all of the medical evidence, including the FCE. A very detailed review of all of the medical evidence is found in Liberty Life's brief to the trial court. (R. 13).

In sum, both Dr. Lang and Dr. White found that Mr. Pfenning could perform sedentary and even light work with some restrictions. (R. 9, LL108-129). This finding is within the same range of restrictions stated by Dr. Potts earlier (R. 9, LL366-367) and the Dr. Wickstrom FCE report submitted by Mr. Pfenning's counsel (R. 9, LL161-177), as well as the restrictions form filled out by Dr. O'Connell earlier (R. 9, LL317). It is consistent with the surveillance. (R. 9, LL473-488). Importantly, there is no valid counterpoint to these restrictions. The FCE results were central to Liberty Life's findings, not ignored by them.

**III. Liberty Life properly determined that Mr. Pfenning's occupation is most often performed at both the sedentary and at the light physical demand levels, with sufficient opportunities for work at either demand level.**

Mr. Pfenning states it best when at page 36 of his appeal brief, he cites to *Frazier v. LINA*, 725 F.3d 560, 564 (6th Cir. 2013) which defined "own occupation" as:

> The occupation the employee routinely performs at the time the disability begins. ***The insurance company will consider the duties of the occupation as it is normally performed in the general labor market in the national economy. It is not work tasks that are performed for a specific employer or at a specific location***." [Emphasis added].

This is exactly what Liberty Life did here. In Ms. Reddinger's occupational analysis and vocational review (R. 9, LL91-96), she reviewed the Dictionary of Occupational Titles (DOT), Occupational Outlook Handbook (OOH), Occupational Information Network (O*NET)/Standard Occupational Classification (SOC), internet job boards, the report by Amanda Voce, the report by Mark Pinti as well as Mr. Pfenning's claim file, the Farmers Insurance job description and listed the job duties, and Mr. Pfenning's self-reported description of his job as reported by Mr. Pinti. (R. 9, LL92).

Based on all of this information, she determined that the job tasks are best represented by the occupational title Claim Examiner/Adjuster/Investigator. *Id.* This occupational title has four DOT descriptions and two SOC/O*NET

descriptions that accurately reflect the totality of the occupation. *Id.* Ms. Reddinger provided the reference codes for these descriptions at the end of her report: 168.267-014; 191.167-014; 241.217-010 and 241.267-018. (R. 9, LL94). Ms. Reddinger's references from the DOT match up completely with the job duties found in the Farmers Insurance job description. *Id.* This is not error or capricious behavior, as suggested by Mr. Pfenning. This is the standard as stated by this Court in *Frazier* and applied uniformly across every disability case Liberty Life handles in order to provide consistency in review across every claim.

Ms. Reddinger reported that these descriptions indicate that this occupation is most often performed at both the sedentary and at the light physical demand levels, with sufficient opportunities for work at either demand level. (R. 9, LL93).

If this matches up with the medical restrictions—as stated by the medical evidence—then the claimant is not disabled as defined by the policy. Here, the medical restrictions (consistent across all of the medical evidence) are standing and walking on an occasional basis; no walking on wet or uneven ground or in low light environment; no climbing ladders; climbing steps occasionally as long as they are equipped with a banister; squatting, bending or kneeling only occasionally and not on uneven or wet surfaces or in low light environment; no activity in unprotected heights or near unprotected bodies of water; pushing/pulling up to 10 pounds while standing/walking; pushing/pulling up to 20 pounds while sitting on

an occasional basis; lifting up to 10 pounds on an occasional basis while standing/walking. (R. 9, LL366-367).

With Dr. Lang, Dr. White, Dr. Wickstrom and Dr. O'Connell all stating that Mr. Pfenning could work at least at a sedentary capacity and where there is no countervailing statement regarding functional capacity, it is reasonable for Liberty Life to conclude that Mr. Pfenning has at least a sedentary functional capacity. In fact, the restrictions, as outlined, suggest a light duty work capacity as long as the restrictions are followed. Accordingly, under any standard of review as applied to this policy's terms, Mr. Pfenning is not disabled.

## CONCLUSION

Where an administrator has advanced a reasonable interpretation, that interpretation should be upheld even if there is another conflicting reasonable interpretation. *E.g., Wells v. United States Steel & Carnegie Pension Fund, Inc.,* 950 F.2d 1244, 1248 (6th Cir. 1991); *Johnson v. Eaton Corp.,* 970 F.2d 1569, 1574 (6th Cir. 1992). Liberty Life's decision should be upheld "if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence." *Killian v. Healthsource Provident Admins., Inc.,* 152 F.3d 514, 520 (6th Cir. 1998).

Even under a *de novo* standard, however, Liberty Life properly considered all of the medical evidence under the terms of the policy, correctly determined the

medical restrictions that applied to Mr. Pfenning, and vocational experts correctly analyzed Mr. Pfenning's job "as it is normally performed in the general labor market in the national economy" (see.e.g., *Frazier v. LIMA*, 725 F.3d 560 (6th Cir. 2013) and determined that Mr. Pfenning could perform such duties with his medical restrictions.

Accordingly, Liberty Life correctly denied Mr. Pfenning's claim and the decision denying disability benefits should be affirmed.

Respectfully submitted,

*/s/Douglas R. Dennis*
Douglas R. Dennis (0065706)
FROST BROWN TODD, LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202-4182
(513) 651-6727
Trial Attorney for Defendant Liberty
Life Assurance Company

## CERTIFICATION OF COMPLIANCE

I hereby certify that this Brief of the Appellant complies with the type-volume limitation of Fed. R. App. P. 32(a)(7).  Excluding the corporate disclosure statement, table of contents, table of authorities, statement in support of oral argument, certificate of compliance, certificate of service, designation of appendix contents, and statutory addendum, this brief contains 6,395 words.

*/s/Douglas R. Dennis*

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing corrected brief has been served on Joseph McDonald, 683 Miamisburg-Centerville Road, Suite 210, Centerville, Ohio 45459 via electronic filing and regular United States Mail this April 11, 2016.


*/s/Douglas R. Dennis*

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Pursuant to Sixth Circuit Rule 30(b), Defendant/Appellee Liberty Life Assurance Company of Boston designates the following relevant district court documents:

| Description of Entry | Record Entry Number | Page ID |
|---|---|---|
| Complaint | 1 | 1-28 |
| Answer | 2 | 29-39 |
| Administrative Record (under seal) | 9 | LL1-602 |
| Liberty Life's Motion for Summary Judgment and Memorandum in Support | 13 | 660-688 |
| Mr. Pfenning's Motion for Summary Judgment and Memorandum in Support | 14 | 689-720 |
| Liberty Life's Response in Opposition | 15 | 721-737 |
| Mr. Pfenning's Response in Opposition | 16 | 738-783 |
| Decision and Order | 17 | 784-805 |